**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
EMPIRE STATE CARPENTERS WELFARE, PENSION
ANNUITY, APPRENTICESHIP, CHARITABLE
TRUST, LABOR MANAGEMENT COOPERATION,
AND SCHOLARSHIP FUNDS AND THEIR
TRUSTEES, DALE STUHLMILLER, TODD
HELFRICH, PATRICK MORIN, DOUG O'CONNER,
JOHN O'HARE, JOHN DELOLLIS, CHRIS FUSCO,
ALAN EHL, WILLIAM MACCHIONE, WILLIAM
BANFIELD, JAMES MALCOLM, STANLEY
TURTENWALD, ROSS PEPE, ALAN SEIDMAN,
LLOYD MARTIN, LARRY THAYER, WILLIAM
WEIR, DAVID HAINES, FRANK WIRT, TOM BURKE,
JAMES LOGAN, FRANK JONES, AARON HILGER,
ANGELO MASSARO, JAMES HOLLEY,

                     Plaintiffs,

            - against -

A-PLUS FLOORING, INC.,

                     Defendant.
----------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 10-1634 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiffs Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Trust, Labor Management Cooperation and Scholarship Funds ( the "Funds") and their respective Trustees (collectively, the "Plaintiffs") bring this action against A-Plus Flooring, Inc. (the "Defendant" or "A-Plus") for the collection of unpaid and delinquent contributions and attendant damages pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.

After Defendant failed to answer or otherwise move with respect to the Complaint, Defendant's default was noted by the Clerk of the Court and Plaintiffs moved for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.[1] *See* DE 4-5. Judge Seybert has referred this motion to me for a Report and Recommendation as to whether the motion should be granted, and, if so, to determine the appropriate amount of damages, if any, to be awarded to the Plaintiffs.

Plaintiffs seek an award of unpaid fringe benefit contributions, interest, liquidated damages, attorneys' fees and costs. According to Plaintiffs' unchallenged allegations, the total amount owed by Defendant is $163,681.23. Based upon the information submitted by Plaintiffs and for the reasons set forth below, the Court respectfully recommends to Judge Seybert that a default judgment be entered against the Defendant and that damages totaling $162,721.57 be awarded to Plaintiffs as follows: (1) $53,635.88 for unpaid fringe benefits; (2) $94,958.05 for interest on the unpaid fringe benefits; (3) $10,727.18 in liquidated damages; and (4) $3,400.46 in attorneys' fees and court costs.

## II. BACKGROUND

The Funds involved in this case are multi-employer employee benefit plans. *Id.* ¶ 3. A-Plus has been a party to one or more collective bargaining agreements with the Empire State Regional Council of Carpenters (the "Union") as well as to the Restated Agreements and Declarations of Trust of the Plaintiff Funds (collectively, "the Agreements"), which obligate the

---

[1] For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b).

Defendant to comply with the terms of the Agreements, including making contributions to the Funds for those employees covered by the Agreements. *Id.* ¶ 7. Specifically, the Agreements authorize the Trustees to examine and copy any of the employer's books, papers and reports which will permit the Trustees to determine whether the Defendant is making full payment of the amounts required by the Agreements. *Id.* ¶ 8.

The Funds first conducted an audit of Defendant for the time period January 1, 2000 through December 31, 2001. *Id.* ¶ 9. A subsequent audit for the time period January 1, 2002 through December 31, 2005 was also completed. *Id.* ¶ 11. These audits revealed that Defendant owed the Funds fringe benefit contributions. *Id.* Therefore, on September 16, 2009, Plaintiffs sent a letter to Defendant notifying it of the delinquency. *Id.* ¶ 13. After not receiving the fringe benefit contributions owed, the Trustees, as fiduciaries of the Funds, commenced this action in April 2010.

### III. APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *See* Fed. R. Civ. P. 8(b)(6); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). However, the fact that a complaint remains unanswered will not suffice to establish liability on its claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." *Said v. SBS Elecs., Inc.*, No. CV 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as mod. by* 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010). Therefore, "it remains the plaintiff's burden to

demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Id.*

In addition, courts have considered the same factors which apply to a motion to set aside entry of a default: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.,* No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (finding that courts may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt" when deciding a motion for default judgment) (internal quotations and citation omitted). Ultimately, the decision to grant a motion for default judgment is left to the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

**IV.    DISCUSSION**

  **A.    Default**

As to the first factor, the failure of the Defendant to respond to the Complaint, under the present facts, sufficiently demonstrates willfulness. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). Defendant's willful default is evidenced by the waiver of service of summons which was executed by Dennis Zingarelli, President of A-Plus, on April 22, 2010. *See* DE 2. This waiver explicitly states that Defendant received a copy of the Complaint and that an answer or motion under Rule 12 was due 60 days after April 14, 2010. However, Defendant neither answered nor

responded in any way to the Complaint, nor did it request an extension of time to respond. In addition, Plaintiffs submitted an affidavit of service confirming that the Defendant was served by mail with a copy of Plaintiffs' motion for entry of default. *See* DE 4. Moreover, a copy of the Entry of Default by the Clerk of Court was also sent to the Defendant. *See* DE 5. Therefore, the court file removes any doubt that the Defendant's failure to respond to the Complaint, despite being properly served, was anything but deliberate.

Next, the Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court. Although Defendant's default constitutes an admission of all the factual allegations in the Complaint as they relate to liability, Plaintiff must nevertheless demonstrate that the uncontested allegations set forth valid claims. *Said*, 2010 WL 1265186, at *2. In this case, the Complaint sufficiently alleges Defendant's violation of ERISA. In particular, Section 1145 of the statute states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The Complaint alleges that the Funds are multi-employer employee benefit plans, within the meaning of ERSIA, 29 U.S.C. §§ 1002(3), (37) and the Defendant is an "employer" as that term is defined under 29 U.S.C. § 1002(5). Further, the Complaint asserts that although the Defendant was obligated to make contributions to the Funds regarding those employees covered under the Agreements, two audits nonetheless uncovered Defendant's failure to do so. As such, the requirements of the statute have been met.

The last factor to consider is whether the non-defaulting party would be prejudiced if the motion for default were to be denied. Denying this motion would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders.,* 2003 WL 1960584, at *3). Since all three factors have been satisfied with regard to Defendant A-Plus, I respectfully recommend to Judge Seybert that default judgment be entered against it.

### B. Damages

Although a default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability, a plaintiff must still prove damages. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005). Therefore, the only question remaining is whether a plaintiff has provided adequate support for the relief he seeks. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159. In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

In determining damages not susceptible to simple mathematical calculations, Rule 55(b)(2) of the Federal Rules of Civil Procedure gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient. *Action S.A. v. Marc Rich and Co.*, 951 F.2d 504, 508 (2d Cir. 1989). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person

court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). In this case, Plaintiffs have submitted the following documents in support of their request for an award of damages: (1) Plaintiffs' Statement of Damages; (2) Declaration of Owen M. Rumelt (counsel for Plaintiffs), dated November 16, 2010, with billing records annexed ("2010 Rumelt Decl."); (3) Declaration of Owen M. Rumelt, dated August 18, 2011, with copies of the June 1999 through May 2002 and June 2002 through May 2006 Master Agreements attached ("2011 Rumelt Decl."); and (4) Declaration of Stephen Bowen, payroll audit supervisor with the accounting firm of Schultheis & Panettieri, LLP ("S&P"), with annexed exhibits, including a deficiency schedule and the relevant portion of the Agreements covering interest calculations for delinquent contributions owed. The Court finds that Plaintiffs' submissions provide sufficient evidence to form the basis for an award of damages without a further hearing. The following discussion assesses the amount of damages to which Plaintiffs are entitled based upon the information set forth in Plaintiffs' supporting documentation as evaluated by the Court.

### 1. *Unpaid Fringe Benefit Contributions*

Under ERISA, a plaintiff is entitled to have the defendant pay the full amount of unpaid fringe benefit contributions owed. *See* 29 U.S.C. § 1132(g)(2)(A). In this case, Plaintiffs seek to recover the unpaid fringe benefits earned by those employees of Defendant covered under the Agreements between January 1, 2002 through December 31, 2005. As determined by a payroll audit conducted by S&P, the Plaintiffs allege that the amount of outstanding and unpaid fringe

7

benefit contributions owed to the Funds is $53,635.88.[2]  *See* Bowen Decl. ¶ 8.

Courts in this District "have found it appropriate to rely on an audit or an auditor's opinion to prove that defendant employers did not make required contributions to funds." *Hanley v. Orient Beach Club*, 96 Civ. 4478, 1998 WL 65990, at *5 (S.D.N.Y. Feb. 18, 1998) (quoting *Grabois v. Action Acoustics, Inc.,* 94 Civ. 7386, 1995 WL 662127 at *5 n.3 (S.D.N.Y. Nov. 9, 1995); *see also Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Phillip Gen. Constr.*, No. 05 CV 1665, 2007 WL 3124612, at *10 (E.D.N.Y. Oct. 23, 2007) (finding that "the opinion of an auditor is a sufficient basis for an award of a specific amount of damages" if adequately explained).

In support of the requested figure of unpaid fringe benefit contributions owed, Plaintiffs submit a copy of the schedule prepared by S&P which lays out the hours worked by each employee covered under the Agreements and the fringe benefit contributions due to the Funds covering the audit period of January 2002 through December 2005.  *See* Bowen Decl.,  Ex. A. This schedule clearly establishes, through calculations for each covered employee of Defendant, how the $$53,635.88 figure was reached.  *Id.*  In light of the independent audit, Plaintiffs have adequately supported their claim for $53,635.88 in unpaid fringe benefit contributions.  As such, the Court respectfully recommends to Judge Seybert that the Plaintiffs be awarded $53,635.88 for unpaid contributions.

---

[2]  Although Bowen's Declaration states that the amount owed to Plaintiffs is $53,635.63, it is clear to the Court that the 63 cents was a typographical error, and that amount instead should have been stated as $53,635.88, reflecting the amount in the attached audit report.  *See* Bowen Decl., Ex. A.

B.     **Interest On Unpaid Contributions**

A plaintiff is also entitled to recover interest on the unpaid fringe benefit contributions at "the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26.'" 29 U.S.C. § 1132(g)(2). Here, Plaintiffs contend that pursuant to the Agreements, they are entitled to interest at a rate of twenty-six percent (26%) per annum on all outstanding fringe benefit contributions. *See* Bowen Decl. ¶ 9. According to the Plaintiffs, the interest owed equals $99,318.17. *Id.* ¶ 10.

In support of the proposed 26% interest rate,[3] Plaintiffs provide a copy of the Union Master Agreement covering the period of June 2002 through May 2006. *See* 2011 Rumelt Decl., Ex. B. In particular, Article Twenty, Section (b) of the Master Agreement provides that upon the failure to remit the required contributions owed, the employer shall be liable for 1.5% interest for each twenty-one (21) day period the delinquency continues, which equates to 26% per annum. *Id.* at 19. Applying the 26% interest rate to the deficient contributions, S&P calculated interest owed at $99,318.17. *See* Bowen Decl., Ex. A.

After reviewing the interest calculations within the audit, the Court finds S&P's calculations to be correct and in accordance with the terms of the Agreements, with the exception of the audit covering the time period January 2002 through May 2002. This period of time was covered by the preceding Master Agreement in which the employer was liable for 1.5% interest for each thirty (30) day period the delinquency continued, which equates to 18% per annum. *See* 2011 Rumelt Decl., Ex. A at 18. As such, the delinquent contribution of $5,906.75 during this

---

[3] Although the Court was initially surprised to see an interest rate calculation at 26%, the Master Agreement substantiates that this percentage was agreed upon by the parties to the Agreement. *See* 2011 Rumelt Decl., Ex. B at 19.

2002 period should have been multiplied by a per annum interest rate of 18%, not the 26% applied by S&P. Therefore, S&P's calculated interest of $14,141.74 for this period should be reduced to $9,781.62. This computation, in turn, reduces the total interest calculated by $4,360.12, resulting in $94,958.05 ($99,318.17 - $4,360.12) in total interest due. Accordingly, the Court recommends to Judge Seybert that $94,958.05 be awarded to Plaintiffs for interest on the unpaid fringe benefit contributions.

### C. Liquidated Damages

Plaintiffs also contend, correctly, that Defendant is liable for liquidated damages. Pursuant to 29 U.S.C. § 1132(g)(2), the Defendant is required to pay liquidated damages provided under the plan in an amount not to exceed 20% of the unpaid contributions.[4] The submitted Agreement states that an employer who has failed to make the required contributions is liable for 20% of the total due to each Fund as liquidated damages. *See* Bowen Decl. Ex B. Calculating 20% of the contribution deficiency ($53,635.88) yields a figure of $10,727.18. The Court therefore recommends to Judge Seybert that Plaintiffs be awarded liquidated damages in the sum of $10,727.18.

### D. Attorneys' Fees and Costs

Finally, Plaintiffs seek reimbursement for attorneys' fees and costs totaling $3,637.96. *See* Rumelt Decl. ¶¶ 15-19. Pursuant to 29 U.S.C. § 1132(g)(2)(D), attorneys' fees and costs are recoverable from the defendant in these circumstances. Under the express provisions of ERISA,

---

[4] The Court notes that Section 1132(g)(2) actually provides a successful plaintiff with the option of receiving, as additional damages, the greater of either the interest on the unpaid contributions *or* liquidated damages not to exceed 20% of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). However, in this case, the Master Agreement specifically calls for liquidated damages in the specific amount 20% of unpaid contribution. *See* 2011 Rumelt Decl. Ex. B at 19.

"[a]n award of costs and reasonable attorneys' fees, in an action such as this, to recover unpaid union fringe benefit contributions, is mandatory." *Mason Tenders Dist. Council Welfare Fund. v. A.G.I., Inc.,* No. 03 Civ. 1238, 2005 WL 1565831, at *6 (S.D.N.Y. June 8, 2005); *see also Iron Workers Dist. Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* 68 F.3d 1502, 1506 (2d Cir. 1995) (ruling that after the 1980 amendments to Section 1132(g), "[c]ongress thereby made the award of attorney fees mandatory for suits involving delinquent employers").

Plaintiffs request attorneys' fees in the amount of $3,174.50 for 17.4 hours of legal services. Rumelt Decl. ¶¶ 11-16. Courts within the Second Circuit determine appropriate attorneys' fees according to a "presumptively reasonable fee" standard. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2007). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184. The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Services, Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking

11

reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). In order to apply out-of-district rates, a party must overcome a presumption in favor of the forum rule. *See Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 191. To overcome the presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons,* 575 F.3d at 172. The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[5] and remain mindful that "a

---

[5] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

In 2007, the Eastern District observed that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Medical Services PC,* 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (awarding fees in FLSA and New York Labor Law case based on $250 hourly rate for partner, $150 hourly rate for associate, and $75 hourly rate for legal assistant). It appears that these figures, with minimal changes, remain in effect. *See Brady v. Wal-Mart Stores, Inc.*, No. 03-CV-3843, 2010 WL 4392566, at *5 (E.D.N.Y. Oct. 29, 2010) ("Fee awards in this district in recent years have approved hourly rates in the range of $200 to $400 for partners, $100 to $295 for associates, and $70-$100 for paralegal assistants.").

To determine whether the number of hours spent by plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation. . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524

13

F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted).

In this matter, Plaintiffs retained the services of (1) Slevin and Hart, P.C. ("Slevin and Hart"), located in Washington, D.C. and (2) Levy Ratner, P.C. ("Levy Ratner") located in Manhattan, N.Y. to serve as local counsel. According to Plaintiffs, Slevin and Hart associate Alexandra A. Tsiros charged Plaintiffs a per hour fee of $265 for 7.0 hours of legal work performed while partner Allison A. Madan billed Plaintiffs a per hour fee of $345 for .1 hour of legal services. 2010 Rumelt Decl. ¶ 5 and Ex. 1. In addition, two Slevin and Hart paralegals billed Plaintiffs a per hour fee of $140 for 6.5 hours of legal services. With regard to Levy Ratner, partner Owen Rumelt charged Plaintiffs a per hour fee of $250 for legal services totaling .7 hours while two Levy Ratner paralegals charged $75 for 3.5 hours of legal services. 2010 Rumelt Decl. ¶ 5 and Ex. 2. These rates, with the exception of the $140 Slevin and Hart paralegal rate, fall within the parameters found reasonable by other courts in this District. However, as this District has already once concluded, the $140 per hour rate for Slevin paralegals "is not within the range of approved hourly rates in this district." *Empire State Carpenters Welfare v. Hanna Contracting, Inc.*, No. CV 10-0243, 2011 WL 845083, at *2 (E.D.N.Y. Feb. 8, 2011). Instead, the Court recommends that the $140 paralegal rate be adjusted to $100 per hour.

Furthermore, in support of the hours worked on this case, Plaintiffs provide the Court with time records covering entries from February 2010 through November 2, 2010. 2010 Rumelt Decl. Exs. 1-2. The submitted time records describe who and what tasks were performed on behalf of Plaintiffs in connection with the case, the dates on which such tasks were performed and the amount of time expended. *Id.* These records evidence the reasonableness of the 17.4 hours of legal services expended by counsel in bringing this case to a resolution. As such, with

the slight adjustment mentioned above for the Slevin and Hart paralegal rate, the Court finds that Plaintiffs are entitled to recover attorneys' fees is in the amount of $2,937.

Lastly, Plaintiffs seek costs and disbursements totaling $463.46. 2010 Rumelt Decl. ¶¶ 17-18. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987). Here, the costs which Plaintiffs incurred and for which they seek reimbursement are: (1) $107.06 in legal research; (2) filing fee of $350; and (3) PACER charges of $6.40. These costs, which are adequately documented in the accompanying billing records, have been found to be properly recoverable. *See Entral Grp. Intern v. Sun Sports Bar Inc.*, No. 05-CV-4836, 2007 WL 2891419, at *12 (E.D.N.Y. Sept. 28, 2007) (citing *Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004)). Since the full request of costs in the amount of $463.46 is proper, the Court respectfully recommends to Judge Seybert that Plaintiffs be awarded attorneys' fees and costs in the total amount of $3,400.46.

## IV. CONCLUSION

Based upon the foregoing information, the Court respectfully recommends to Judge Seybert that a default judgment be entered against Defendant A-Plus Flooring, Inc. in the amount of $162,721.57, pursuant to the following amount:

- $53,635.88 for unpaid fringe benefits;
- $94,958.05 for interest on the unpaid fringe benefits;
- $10,727.18 in liquidated damages; and
- $3,400.46 in attorneys' fees and court costs.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation upon the Defendant forthwith by overnight mail and first class mail and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
August 26, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge